806 F.2d 44
 6 Fed.R.Serv.3d 798, 13 Media L. Rep. 1700
 Rev. Clarence KELLY, Rev. Anthony Cekada, Rev. Daniel Donan,
Rev. Donald Sanborn, Plaintiffs-Appellants,
v.
Rev. Franz SCHMIDBERGER, Rev. Richard Williamson, Rev.
Hector Bolduc, Walter L. Matt, the Angelus Press, the
Remnant Press, the Society of Saint Pius X, South-West
District, Inc., Saint Aloysius Gonzaga Fund, and Issac
Jogues Fund, Defendants.
Appeal of Rev. Franz SCHMIDBERGER, Rev. Richard Williamson,
Rev. Hector Bolduc, the Angelus Press, the Society of Saint
Pius X, South-West District, Inc., Saint Aloysius Gonzaga
Fund, and Issac Jogues Fund, Defendants-Appellees.
 No. 1490, Docket 85-7931.
 United States Court of Appeals,
Second Circuit.
 Argued July 14, 1986.
Decided Nov. 20, 1986.
 
 1
 Richard M. Zuckerman, New York City (James D. Fornar, Jarblum, Solomon & Fornar, New York City, on the brief), for plaintiffs-appellants.
 
 
 2
 Barbara Roth, New York City (Andrew J. Hughes, Harry T. Walters, Townley & Updike, New York City, on the brief), for defendants-appellees.
 
 
 3
 Before WINTER, Circuit Judge, MAHONEY, Circuit Judge and LASKER, Senior District Judge.*
 
 
 4
 LASKER, Senior District Judge.
 
 
 5
 Plaintiffs-appellants Clarence Kelly, Anthony Cekada, Daniel Dolan and Donald Sanborn appeal from a final judgment of the United States District Court for the Southern District of New York (Pierre N. Leval, Judge) granting summary judgment to defendants and dismissing the complaint for failure to state a claim for actionable libel. Appellants allege that the district court erred, as a matter of law, in dismissing their complaint after concluding that the statements which form the basis for this action were "assertions of opinion and as such protected by the First Amendment from challenge by a libel action." Kelly v. Schmidberger, 12 Media L. Rep. 1297, 1299 (S.D.N.Y.1985).
 
 BACKGROUND
 
 6
 Kelly, Cekada, Dolan and Sanborn are ordained Roman Catholic priests who are members of a priestly society known as the Fraternity of the Apostles of Jesus and Mary, also known as the Sacerdotal Society of Saint Pius X (the "priestly society"). In addition they are directors and officers of the not-for-profit corporation, the Society of Saint Pius X, North-East District, Inc.
 
 
 7
 Defendants-appellees Franz Schmidberger, Richard Williamson and Hector Bolduc are also Roman Catholic priests and members of the priestly society. Schmidberger was the Vicar General of the priestly society and in 1983 became its Superior General. Williamson formed defendants Saint Aloysius Gonzaga Fund and St. Issac Jogues Fund, unincorporated entities which raise funds for the priestly society's seminary program. Bolduc is president of defendant Society of St. Pius X, South-West District, Inc.[1]
 
 
 8
 In May, June and July 1983, defendants published a series of statements about plaintiffs which are the subject matter of this libel action. The publications in suit are four: letters dated May 12 and 14, 1983 written by Bolduc, and the June and July 1983 issues of the magazine The Angelus, published by defendant The Angelus Press and of which Bolduc is editor. These publications memorialize, for the most part, defendants' side in what appears to be a blistering theological debate with plaintiff priests about the role of the priestly society and the principles and beliefs its membership should embrace. Apparently because of the divergence of opinions on fundamental theological issues, this debate has taken a very personal focus.
 
 
 9
 On appeal, plaintiffs ask this court, in considering whether they have stated a claim for actionable libel, to focus particularly on language contained in Bolduc's May 14, 1983 letter. They make two arguments in support of the claim that their complaint adequately states a cause of action for libel. First, they contend that statements contained in the letter, charging that plaintiffs fraudulently placed church property "in their own names" and thus "sacked" the church, are libelous per se in that they impugn plaintiffs' integrity and fitness as priests. Second, plaintiffs contend that these statements were assertions of fact and accordingly are not protected as expressions of opinion, as the District Court held.
 
 
 10
 After reviewing Bolduc's May 14 letter, we conclude that the following statement (set in italics and quoted in context) is distinguishable from others sued upon in that it is both susceptible of a defamatory meaning and understandable as an assertion of fact rather than opinion, and therefore constitutes actionable libel:
 
 
 11
 We have to ask ourselves why these two priests involved in this particular resolution would want to have full power of attorney over every U.S. corporation of the Fraternity? It is reported and even admitted by the priests themselves that they have conveniently placed the property belonging to Archbishop Lefebvre and the Society in their own names. It would appear at this time that all properties in the North-East District are in jeopardy. One must conclude that not having been satisfied with having sacked the North-East, they wished to extend their greedy possessiveness to the South-West District as well.
 
 
 12
 As to the remaining statements alleged in the complaint to be libelous, we agree with Judge Leval that they are not actionable because they are statements of opinion.
 
 
 13
 Appellees note in their brief, but do not argue the point, that appellants failed to aver the specific aforementioned statement in their complaint. Nevertheless, this does not preclude consideration on appeal of whether the statement is actionable. Because in federal diversity cases such as this, procedural matters are governed by the Federal Rules of Civil Procedure, "the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P." Geisler v. Petrocelli, 616 F.2d 636, 640 (2d Cir.1980). Under Rule 8(e)(1), the standards for sufficiency of the pleadings are liberal. "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Id. The test of a complaint's sufficiency is whether it is detailed and informative enough "to enable defendant to respond and to raise the defense of res judicata if appropriate." Geisler, 616 F.2d at 640. Complaints which do not plead the allegedly defamatory statements in haec verba have in the past been held sufficient. See Pirre v. Printing Developments, Inc., 432 F.Supp. 840, 843 (S.D.N.Y.1977). The central concern is that the complaint "afford defendant sufficient notice of the communications complained of to enable him to defend himself." Liguori v. Alexander, 495 F.Supp. 641, 647 (S.D.N.Y.1980). Plaintiffs' averments in paragraphs 24-25 and 38-46 of their complaint are sufficiently related to the accusation that they have placed church property "in their own names" to make consideration of the latter statement appropriate here.
 
 Libelous Meaning
 
 14
 Under New York law, it is for the court to decide whether, under a fair construction, the offending words pleaded in a libel action are susceptible of a libelous meaning. James v. Gannett Co., 40 N.Y.2d 415, 420, 386 N.Y.S.2d 871, 874, 353 N.E.2d 834, 837 (1976); Tracy v. Newsday, Inc., 5 N.Y.2d 134, 136, 182 N.Y.S.2d 1, 3, 155 N.E.2d 853, 854 (1959).
 
 
 15
 The publisher of a libel may not, of course, escape liability by veiling a calumny under artful or ambiguous phrases and, if any common-sense construction of what was written justifies or supports a defamatory meaning, it will be for the jury, not the court on motion, to decide whether the writing was or was not defamatory.
 
 
 16
 Nichols v. Item Publishers, Inc., 309 N.Y. 596, 601, 132 N.E.2d 860, 862 (1956) (citing Mencher v. Chesley, 297 N.Y. 94, 102, 75 N.E.2d 257, 260 (1947)). On a motion to dismiss or for summary judgment, the issue is not whether the court regards the language as libelous, but whether it is reasonably susceptible of such a construction. "The court may not ... interfere with the jury's role by treating as nondefamatory a statement that a reasonable juror may fairly read in context as defamatory." Sharon v. Time, Inc., 575 F.Supp. 1162, 1165 (S.D.N.Y.1983) (citing Mencher, 297 N.Y. at 102, 75 N.E.2d at 260).
 
 
 17
 An allegedly libelous statement presents an issue for trial if
 
 
 18
 a fair and natural construction of the language used would permit a jury to reasonably find that such language did impair confidence in the character or ability of the plaintiff by charging her with, for example, dishonesty, lack of integrity and ability or the commission of some dishonorable, unbusinesslike or disgraceful acts and, therefore, did tend to injure the plaintiff in her business or occupation and thus be libelous per se.
 
 
 19
 Busk v. Ezyindex Products Corp., 35 Misc.2d 780, 783, 231 N.Y.S.2d 76, 80 (Sup.Ct.Queens Co.), aff'd mem., 18 A.D.2d 700, 236 N.Y.S.2d 940 (2d Dept. 1962). A writing is libelous per se, and actionable without proof of special damages, if it "tends to disparage a person in the way of his office, profession or trade." Nichols, 309 N.Y. at 601, 132 N.E.2d at 862 (citations omitted).
 
 
 20
 Bolduc's assertion that plaintiffs have placed church property "in their own names" amounts to much more than describing or even casting aspersions on plaintiffs' theological views. The ordinary reader of these periodicals might well read these words as accusing plaintiffs of fraudulent, if not illegal, activity.[2] A charge of corrupt or criminal conduct is clearly sufficient to sustain an action for libel. Rinaldi v. Holt, Rinehart & Winston, Inc., 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299, cert. denied, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977).
 
 Fact v. Opinion
 
 21
 In finding no actionable libel in the disputed publications, Judge Leval concluded:
 
 
 22
 As to nearly all the statements here challenged, it is clear they fall on the side of protected opinion. They are in the nature of evaluation, editorialization, characterization and description. They do not assert facts, susceptible of being verified or disproved, but evaluations and opinions.
 
 
 23
 A small number of the cited passages come closer to the line, for example, the passage stating that "some [plaintiffs] are, in fact, engaged in gross miscarriages of justice and in outright fraud".... The context makes clear that the word fraud is not used to suggest the appropriateness of grand jury intervention; it conveys outspoken disagreement, disapproval, contempt, and even a challenge to sincerity in the context of theological debate and the politics of church affairs. No actionable libel is committed when a political candidate calls his opponent a "fraud," and none is committed here.
 
 
 24
 12 Media L. Rep. at 1300.
 
 
 25
 To dispose of a claim of libel on a motion for summary judgment, a court must be satisfied that the alleged libelous statement under consideration is a statement of opinion, which would be entitled to first amendment protection. This inquiry must be guided by the principles articulated by the Supreme Court in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974):
 
 
 26
 Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.
 
 
 27
 Id. at 339-40, 94 S.Ct. at 3007 (footnote omitted). The distinction between fact and opinion is therefore critical in determining whether a defamatory statement may be actionable.
 
 
 28
 This court has recently articulated a formula for the determination of whether a statement is one of fact or opinion:
 
 
 29
 [W]e must examine both the context in which the statements are made and the circumstances surrounding the statements. We must also look at the language itself to determine if it is used in a precise, literal manner or in a loose, figurative or hyperbolic sense. Related to this inquiry, we must examine the statements to determine if they are objectively capable of being proved true or false. Finally, if the above analysis indicates that the statement is opinion, we must determine if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.
 
 
 30
 Mr. Chow of New York v. Ste. Jour Azur S.A., 759 F.2d 219, 226 (2d Cir.1985) (citations omitted). Upon application of these factors, and for the reasons set forth below, we find the italicized portion of the quoted statement from Bolduc's May 14 letter to be a statement of fact, rather than an opinion.
 
 
 31
 In considering the "immediate and broader context in which a statement occurs," we must examine the nature of the publication involved, to determine what expectations or predispositions the average reader will generally bring to it. Mr. Chow, 759 F.2d at 227. We noted in Mr. Chow that editorials or reviews are less likely to be "breeding ground[s] for successful libel actions," id. at 228, since they are generally considered forums for contestable opinion and readers are assumed to approach them with a degree of skepticism and a challenging attitude.
 
 
 32
 At issue here is a statement contained in a letter sent by a priest to his parishioners. In that letter, Bolduc accuses plaintiffs, among other things, of placing church property "in their own names." Although no generalizations can be made about the predisposition of the average reader of such a letter as far as its contents relate to theology and church politics, it is certainly possible--indeed some would argue likely--that readers would understand as factual those matters presented in a letter from a priest relating to church business and the disposition of church property. Even a reader with knowledge of, and disdain for, in-fighting in the priestly society might construe an accusation of fraud or conversion put before him by a leader within the priestly society--someone far more knowledgeable than he about the custody or ownership of church property--as more than an opinion arising from theological disagreement. Such an audience might well accept as true charges such as those levelled here.
 
 
 33
 The next question is whether the language at issue "is used in a precise, literal manner or in a loose, figurative or hyperbolic sense." Mr. Chow, 759 F.2d at 226. The statement that plaintiffs have placed church property "in their own names" is precise, has an apparent, unambiguous meaning, and is different from name-calling or rhetorical hyperbole. We read it as a factual statement, imputing to the plaintiff priests corrupt and possibly criminal conduct. Again, a reader of the letter might well understand such a charge in a literal sense.
 
 
 34
 The question whether the statements at issue are objectively capable of being proved true or false, id., is easily answered, if for no other reason than that defendants themselves clearly assert in their brief that "the only arguable factual component of the passage is true: plaintiffs do control the property in issue." Brief for Appellees at 13 (emphasis in original). Obviously, the defendants themselves consider the statement verifiable. In fact, the question whether plaintiffs have placed priestly society property "in their own names" is apparently so clearly considered by both parties to be capable of resolution that they are currently litigating the question of ownership in a separate action. See Brief for Appellees at 12 n. **.
 
 
 35
 Even if the first three Mr. Chow factors were not successfully met, as we conclude they are in this case, we would reach the same conclusion by application of the fourth and final factor, namely, that "if ... analysis [under the first three factors] indicates that the statement is opinion, [a court must] determine if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." 759 F.2d at 226. Bolduc states explicitly in his May 14 letter that its contents arise out of "[a]n examination of the facts," yet those facts are not set forth for the reader. This tips the scale in favor of reading the statement as an assertion of fact. "Liability for libel may attach ... when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader." Hotchner v. Castillo-Puche, 551 F.2d 910, 913 (2d Cir.), cert. denied, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).
 
 
 36
 In this regard, defendants assert in their defense:
 
 
 37
 [T]he statement [that plaintiffs have placed church property "in their own names"] as a whole, in context, expresses an opinion: that it is unseemly for plaintiffs, while disobedient and disloyal to the Archbishop who ordained them and served as their spiritual leader, to continue to control chapels established by the Archbishop. The passage also expresses the view that the properties in question rightfully belong to the Society.
 
 
 38
 Brief for Appellees at 12. It is not at all clear to us, however, that the ordinary reader of the statement at issue would make such a tenuous connection. Since the charge of conversion made against plaintiffs was not accompanied by an explanation of the rationale for such statement, no message was given to the reader that the statement should be read and understood as opinion.
 
 
 39
 We recognize that a recent decision of this court held that isolated assertions of fact which would be actionable standing alone may be rendered nonactionable by virtue of their subsidiary relationship to broader statements of fact which dominate the publication at issue and are found to be nonactionable in their own right. See Herbert v. Lando, 781 F.2d 298, 311-312 (2d Cir.) (dominant statements nonactionable for lack of actual malice), cert. denied, --- U.S. ----, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986). However, the Lando holding was "limited to those cases in which statements allegedly made with knowing falsity or reckless disregard give rise to defamatory inferences that are only supportive of inferences that are not actionable." Id. at 312 (footnote omitted). Such is not the case at hand. We view the statement that plaintiffs have placed church property "in their own names," even in the context of a highly charged and opinion-riddled theological debate, as susceptible of the construction that the plaintiffs are charged with corrupt and even criminal conduct. Any different conclusion would "permit defamation defendants to freely embellish their stories with falsehoods while remaining free from liability," a result expressly not intended by the Lando decision. Id.
 
 
 40
 Accordingly, we disagree with the district court's decision to the extent that it failed to find the statement that plaintiffs had placed church property "in their own names" to be actionable. We find that this statement might well be construed as an assertion of fact, rather than opinion, and that it is susceptible of a libelous reading. We agree that the remaining statements contained in the four contested publications are protected expressions of opinion, for the reasons set forth by Judge Leval, and thus affirm the dismissal of the complaint as to all defendants except Bolduc and the Society of St. Pius X, South-West District, Inc.[3]
 
 
 41
 The Decision of the district court is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Hon. Morris E. Lasker, Senior District Court Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Plaintiffs' appeal from the district court's dismissal of the action as against additional defendants Walter L. Matt and The Remnant Press has been voluntarily discontinued after settlement
 
 
 [2]
 New York Penal Law Sec. 155.05(1) provides that "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." N.Y. Penal Law Sec. 155.05(1) (McKinney 1975)
 
 
 [3]
 There is no evidence that the other defendants wrote, mailed, or sponsored the May 14 letter