OPINION OF THE COURT
Stuart C. Cohen, J.
Defendants move pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action.
This is an action for money damages arising out of the alleged wrongful termination of plaintiff Leticia C. Rojas’ employment as an associate at defendant Debevoise & Plimpton (Debevoise), a law partnership. The individual defendants are two current Debevoise partners, Barry Mills and Edward Schallert, and a former Debevoise partner, Mario Baeza. The complaint purports to state two causes of action: breach of employment relationship (first cause of action) and defamation (second cause of action).
For purposes of this motion, the court will assume the truth of the complaint’s material allegations and whatever can be reasonably inferred therefrom (McGill v Parker, 179 AD2d 98, 105).
Plaintiff was employed by Debevoise as an associate from March 30, 1992 to February 3, 1993. At first, she was assigned *453 to the "Cuban Task Force" under the supervision of defendant Mario Baeza, a partner at the firm. In or about the end of May 1992, plaintiff attended a meeting with Baeza and Eduardo Martinez-Borbonet, a member of the Cuban mission to the United Nations. The purpose of the meeting was to discuss potential business opportunities in Cuba. After the meeting, Baeza told plaintiff that he had visited Cuba several times and had a one-to-three-hour conversation with Fidel Castro on one of the trips. Plaintiff became concerned that developing business opportunities in Cuba and meeting with a representative of the Cuban government might be in violation of the Trading with the Enemy Act (50 USC, Appendix § 1) and the Cuban Embargo Act. In or about May 1992, Baeza asked plaintiff to leave the Cuban Task Force because she did not want to write a memo comparing the embargo against Cuba with the embargo against Vietnam. In or about June 1992, Baeza went on an excursion to Cancún, Mexico, which was paid for by the Cuban government. The excursion included a brief visit with Castro.
On or about June 16, 1993, plaintiff was told by defendant Barry Mills, a Debevoise partner, that she should expect a call from the Clinton Administration Transition Team inquiring about the character of Baeza. Baeza was being considered for appointment to the post of Under Secretary of State for the Inter-American Affairs. Plaintiff was reluctant to speak to the Transition Team, but Mills told her that she must. On or about January 16, 1993, plaintiff spoke to Renee Ring, a member of the Transition Team, for approximately one-half hour at plaintiffs apartment.
On or about January 19, 1993, plaintiff was contacted by Susan Blumer and Chuck Gomez, who introduced themselves as FBI agents assigned to the Cuban Affairs desk. Blumer told plaintiff that they would like to discuss Baeza and his dealings with Mr. Borbonet of the Cuban mission. During the meeting between plaintiff and the FBI agents, plaintiff was told that everything she said would be completely confidential and that their investigation was independent of the routine background check in connection with Baeza’s proposed nomination. Plaintiff discussed with the agents the meeting with Borbonet, and Baeza’s other dealings with Borbonet.
On January 29, 1993, Borbonet called plaintiff and asked her to meet with him. Upon speaking to Agent Blumer, plaintiff agreed to meet with Borbonet the next day. Agent Blumer told plaintiff that it was too late to obtain permission for her to *454 wear a wire, but that if she desired, she could use her own small tape recorder to record the conversation. Plaintiff agreed to do so and the agents assured her that they would be in the area during the meeting and provide her with complete surveillance and protection.
On January 30, 1993, plaintiff met with Borbonet and she carried a small tape recorder to record the conversation. Borbonet made statements which caused plaintiff to fear for her physical safety should she continue to testify honestly regarding her knowledge of the contacts between Baeza and Borbonet. After the meeting, plaintiff met with Agents Blumer and Gomez and gave them the tape as well as some materials about Cuba that Borbonet had given her.
Over the next two days, plaintiff began to feel that things had gotten too risky for her to handle by herself. On January 31, 1993, she called defendant Mills and told him everything that had transpired. On February 1, 1993, Agent Gomez telephoned plaintiff and informed her that a Debevoise partner in its Washington, D.C. office called the FBI’s D.C. office requesting an explanation of the events and verification of plaintiff’s story. On February 3, 1993, plaintiff met with defendants Mills and Schallert and she was told that she should resign from the firm. Plaintiff believes that had she not resigned, she would have been dismissed from her job. Plaintiff alleges, inter alia, that defendants breached the employment relationship by requesting her to resign as a result of her having testified truthfully to the FBI.
Plaintiff does not challenge settled New York law that in the absence of a contract or unlawful discrimination, an employee may be discharged for any reason or for no reason (Murphy v American Home Prods. Corp., 58 NY2d 293). Rather, plaintiff’s cause of action for breach of an employment relationship is based on an exception to the at-will doctrine that was articulated by the Court of Appeals in Weider v Skala (80 NY2d 628).
Weider (supra) addressed a claim by an associate at a large law firm that he had been discharged for insisting that the law firm report to the pertinent disciplinary committee the unethical conduct of another associate at the same firm, including numerous misrepresentations and acts of malpractice against clients of the firm and acts of forgery of checks drawn on the firm’s account. The Court held that Weider stated a valid claim for breach of contract based upon an implied-in-law obligation in his relationship with the law firm. The Court reasoned that intrinsic to the relationship between Weider and the law firm *455 was an unstated but essential compact that in conducting the firm’s legal practice, both Weider and the firm would do so in compliance with the prevailing rules of conduct and ethical standards of the profession. Insisting that Weider, as an associate in their employ, acted unethically and in violation of Code of Professional Responsibility DR 1-103 (A) (22 NYCRR 1200.4 [a]) (which places upon each lawyer a duty to report to the Disciplinary Committee any potential violations of the Disciplinary Rules that raise a substantial question as to another lawyer’s honesty, trustworthiness or fitness in other respects), one of the primary professional rules, amounted to nothing less than a frustration of the only legitimate purpose of the employment relationship.
Plaintiffs reliance upon Weider (supra) is misplaced. Plaintiff makes no allegation that her employment at Debevoise was terminated due to her insistence that the law firm report allegations of professional misconduct to disciplinary authorities. Nor was plaintiff faced with the choice, as was faced by Weider, of continued employment or possible suspension or disbarment for violation of an ethical obligation imposed by the Disciplinary Rules and Code of Professional Responsibility.
Plaintiff had no legal or ethical obligation to become an FBI informant or to surreptitiously record a face-to-face meeting with a foreign diplomat. Furthermore, there are no allegations that she was either asked to do so or asked not to do so by defendants. In fact, plaintiff concedes that defendants did not know of her actions until after she disclosed them to Mills on January 31, 1993. Moreover, plaintiff concedes that the FBI agents informed her that their investigation was independent of the background investigation of Baeza. It was this background investigation that plaintiff was told by defendants she must cooperate.
Even if the court were to accept plaintiffs claim that she was required by Code of Professional Responsibility DR 1-102 (A) (4), (5), (8) (22 NYCRR 1200.3 [a] [4], [5], [8]) and DR 1-103 (A) (22 NYCRR 1200.4 [a]) to respond truthfully to the FBI inquiries, this would not save her breach of contract claim. As the Weider Court held (supra, at 637): "we, by no means, suggest that each provision of the Code of Professional Responsibility should be deemed incorporated as an implied-in-law term in every contractual relationship between or among lawyers.”
In this case, unlike Weider (supra), plaintiff was not required to act in a way that subverted the core purpose of the employment, the practice of law. Her actions were, in fact, unrelated *456 or extrinsic to the central purpose of the relationship between the parties. Defendants did not insist that she act unethically, nor did they act in any way to impede or discourage the ethical practice of law. Unlike Weider, plaintiff was not placed in a position of having to choose between continued employment and her own suspension and disbarment. Accordingly, since no facts were pleaded to show that defendants frustrated plaintiffs compliance with the core purposes of her employment, no breach of contract claim is stated.
This case is similar to Murphy v American Home Prods. Corp. (supra) where the Court of Appeals dismissed the claim of an employee, the assistant treasurer of a corporation, who alleged he had been discharged in bad faith in retaliation for his disclosure of accounting improprieties including his revelation that he uncovered $50 million in illegal account manipulations of secret pension reserves. The Court expressly declined to follow other jurisdictions in adopting the tort-based abusive discharge cause of action for imposing liability where employees are discharged for disclosing potential illegal activities on the part of their employer. The Court was of the position that such a significant change in the law is best left to the Legislature.
Plaintiff does not purport to state a cause of action under the "whistleblower” statute (Labor Law § 740) which is "triggered only by a violation of a law, rule or regulation that creates and presents a substantial and specific danger to the public health and safety” (Remba v Federation Empl. & Guidance Serv., 76 NY2d 801, 802). The first cause of action is therefore dismissed.
Plaintiff’s second cause of action asserts that defendants committed five separate acts of defamation against plaintiff.
Plaintiff alleges that on or about January 11, 1993, Baeza told one Diane Pizarro that plaintiff had stolen documents from him; that in the first half of February 1993, defendants posted security guards in or about plaintiff’s former work area; that when a security guard was asked by one Alan Bannister what he was doing on Debevoise premises, he responded that he was protecting him from plaintiff; and that one Melissa Krantz acting on behalf of Baeza told one Marlene Fernandez that plaintiff was "crazy, not credible” and "lying”; and that in March 1993, one Bert Lopez, a Debevoise associate, told one Mable Dieppa that plaintiff was "lying”, "not credible” and "not to be believed.”
Plaintiff concedes in her brief that the allegations regarding the posting of the security guard and the statements made by *457 the security guard are insufficient to state a cause of action for defamation.
The. statement by Baeza to Diane Pizarro, another employee of Debevoise, that plaintiff had stolen documents, is subject to a qualified privilege.
When a speaker communicates information on a subject matter in which he has an interest or in reference to which he has a duty and such information is communicated to a person with a corresponding interest or duty, a qualified privilege exists (La Scala v D’Angelo, 104 AD2d 930, 931). Ms. Pizarro and all others present when Mr. Baeza made the remarks were all employees at Debevoise, and all shared an interest in protecting documents from theft.
To overcome a qualified privilege, it is plaintiffs burden to show actual malice (Buckley v Litman, 57 NY2d 516, 521). Plaintiff must plead facts showing that the statement was made with a high degree of awareness of its probable falsity or that defendant entertained serious doubts as to the truth of the matter (Liberman v Gelstein, 80 NY2d 429, 438). Plaintiff has failed to plead such facts. The conclusory pleading of the word "malice” is insufficient (Doherty v New York Tel. Co., 202 AD2d 627, 628). Furthermore, the claim that "Mr. Baeza conceded that [he] had no proof that [plaintiff] had stolen documents from him” (complaint para 42) is insufficient. There is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes malice (see, Liberman v Gelstein, supra, at 438).
Finally, the comments that plaintiff is "crazy”, "lying” - and "not credible” are nonactionable statements of opinion protected under the broad free speech provision of the New York Constitution (Polish Am. Immigration Relief Comm. v Relax, 189 AD2d 370; Immuno AG. v Moor-Jankowski, 77 NY2d 235, 254, cert denied 500 US 954; Goetz v Kunstler, 164 Misc 2d 557).
Accordingly, the motion to dismiss is granted. Clerk shall enter judgment in favor of defendants dismissing the complaint.