**Laurie E. IVES, f/k/a Laurie E. Powers, Plaintiff,**

v.

**GUILFORD MILLS, INC., Advisory Research Services, Inc. and Charles Hayes, Defendants.**

**No. 97–CV–0373 (LEK/RWS).**

United States District Court, N.D. New York.

March 26, 1998.

---

Hodgson, Russ, Andrews, Woods & Goodyear, L.L.P., for Plaintiff, Albany, NY, Richard L. Weisz, of counsel.

McNamee, Lochner, Titus & Williams, P.C., for Defendants, Albany, NY, Scott A. Barbour, of counsel.

Brooks, Pierce, McLendon, Humphrey & Leonard, P.C., for Defendants, Greensboro, NC, Jim W. Phillips, of counsel.

### MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

In this diversity action, plaintiff has brought claims for tortious interference with contract and slander. Now before the Court are two motions made by the defendants: a motion to dismiss and a motion to disqualify plaintiff's attorney. In a previous Order dated February 20, 1998, the Court directed the parties to address the issues raised in defendants' motion to dismiss in light of the amended complaint's allegations. These supplemental arguments have been filed. Now, and for the reasons discussed below, the motion to dismiss is granted in part and denied in part, and the motion to disqualify is denied.

### I. Amended Complaint

■ Defendants argue first that the Amended Complaint should be ignored as being in violation of Fed.R.Civ.P. Rule 5(d). Rule 5(d) states that "[a]ll papers after the complaint required to be served upon a party, together with a certificate of service, shall be filed with the court within a reasonable time after service ...." Fed.R.Civ.P. Rule 5(d). Defendants argue that the Amended Complaint was not filed in a reasonable time after service. They acknowledge receiving the Amended Complaint on April 18, 1997. The Amended Complaint was filed on May 5, 1997. The Court does not find this period unreasonable under the circumstances.

Defendants point out that there was no certificate of service. The Court also expressed concern in its February 20 order at this absence, since it left the Court unable to determine whether the defendants had been served. *See* Dkt. No. 24 at 2 n. 1. The

Federal Rules require that "every pleading subsequent to the original ... shall be served upon each of the parties." Fed. R.Civ.P. 5(a). However, defendants have made it clear that they were, in fact, served. The question then becomes whether the Amended Complaint, although served on the parties and filed with the Court, should be disregarded because of the absence of a certificate of service.

■ The Court concludes that it should not. The principal importance of the certificate of service is to provide the Court with clear proof that service has been accomplished. *See United States v. McCoy*, 1996 WL 351309 (S.D.N.Y. June 26, 1996) (court considered the absence of a certificate of service in effort to determine whether or not attorney had in fact been served). Where actual service is not contested, there is little point to invalidating an Amended Complaint for lack of a certificate, particularly given the plaintiff's right to amend the complaint at least once. Invalidation would seem to serve no purpose except to fruitlessly extend the length of this litigation. The Court will therefore accept the Amended Complaint and review the motion to dismiss in light of its allegations.

*II. Motion To Dismiss*

A district court should grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *Annis v. County of Westchester, N.Y.*, 36 F.3d 251, 253 (2d Cir.1994). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.* 492 U.S. at 249, 109 S.Ct. 2893; *see Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.*, 23 F.3d

636, 639 (2d Cir.1994). Further, on a motion to dismiss for failure to state a claim, the Court is limited in its consideration to the complaint, documents attached to the complaint, undisputed documents alleged or referenced in the complaint, and public records. *See* 2 James Wm. Moore, Moore's Federal Practice, ¶ 12.34[2] at 12–66 (3d ed.1997). The Court's duty is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *accord Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991) (plaintiff is not compelled to prove his case at the pleading stage).

*A. Facts*

For purposes of the motion to dismiss under Fed.R.Civ.P. 12(b)(6), the allegations in the complaint are taken as true. *Doe v. City of New York*, 15 F.3d 264, 266 (2d Cir.1994). Plaintiff alleges as follows. Defendant Guilford Mills, Inc. ("Guilford") is a corporation organized under the laws of Delaware and maintaining its principal place of business in North Carolina. Advisory Research Services, Inc. ("Advisory") is a wholly owned subsidiary of Guilford which was organized and operates under the laws of North Carolina. Charles Hayes ("Hayes") is both the Chairman of the Board of Guilford and the president of Advisory. He resides in North Carolina. Plaintiff is a New York citizen and jurisdiction is therefore properly based on diversity.[1]

On November 1, 1991, defendants Advisory and Keryakos, Inc. ("Keryakos"), a New York corporation managed and wholly owned by Charles Contompasis ("Contompasis"), formed a partnership known as Twin Rivers Textile Printing and Finishing ("Twin Riv-

---

1. The amount in controversy, $12,700,000.00, comfortably exceeds the jurisdictional minimum of $75,000.

ers"). The purpose of the partnership, as stated in the Partnership Agreement, was to engage in a "lycra and cellulosic wet process print operation," in addition to other types of printing processes. Weiss Aff. Exh. A at ¶ 1.5. In the same agreement, Contompasis was made Executive Director, essentially in charge of day-to-day operations.

Plaintiff was an employee of Twin Rivers from its creation. On January 1, 1996, plaintiff entered into an Executive Employment Agreement ("Executive Agreement") with Twin Rivers, see Am. Compl. Exh. A, making plaintiff the General Manager of the partnership, though still working under Contompasis. Section 5 of the Executive Agreement established that the initial term of her employment would be two years from January 1, 1996 and that her employment would then be renewed upon the mutual agreement of plaintiff and the partnership. Section 5 also established conditions under which plaintiff could be terminated. Subsection A provided for termination without cause provided that plaintiff would continue to be paid at 150 per cent of her base salary for the remainder of her initial term. Subsection D provided, in part:

> In the event that Executive is in breach of any material obligation owed Company in this Agreement, habitually neglects the duties to be performed under this Agreement, engages in any conduct which is dishonest, damages the reputation or standing of the Company, or is convicted of any criminal act or engages in any act of moral turpitude, then Company may terminate this Agreement upon five (5) days notice to Executive. In event of termination of the agreement pursuant to this subsection, Executive shall be paid only at the then applicable base salary rate up to and including the date of termination.

Am. Compl. Exh. A. On or around March 26, 1996, plaintiff received a letter from Hayes indicating that she was being discharged "for cause" pursuant to § 5(D) of the Executive Agreement. The letter explained that

> we have learned that you actively participated in various acts of fraud and deceit against Guilford Mills, Inc. ("Guilford"). Specifically, we have learned that the Part-

nership's Executive Director routinely made sales of Partnership goods without properly recording them on the books of the Partnership, thereby allowing him to profit at the expense of Guilford. Moreover, we have been advised that you were aware of such conduct and, in fact, on several occasions, after having observed a vehicle being loaded with goods, rode in the vehicle as the delivery of the goods in these off-the-book sales were being made. In addition, our investigation has revealed numerous questionable transactions between Twin Rivers and Cherechian Trading Company ("Cherechian").... Due to your numerous acts of deceit in connection with the performance of your duties as General Manager of the Partnership, we are hereby terminating your employment with the Partnership, effective immediately.

Am. Compl. Exh. A. Contompasis was discharged around the same time as plaintiff. On March 29, 1996, Hayes advised employees of Twin Rivers that new management had been installed to stop the " 'old management practice of letting things go out the back door.' " Am. Compl. ¶ 40.

Plaintiff alleges that the accusations made in the March 26 letter are untrue and that Hayes was aware of their falsity. She further alleges two possible explanations for her termination. First, she submits that Hayes sought to gain full control of the partnership, and, under the Partnership Agreement, could purchase Contompasis' interest from him at a much lower price if Contompasis were discharged for cause. She does not suggest, however, that her own discharge for cause had any effect on the purchase price. Second, she alleges that Hayes terminated her because she was a woman.

Plaintiff alleges three causes of action. The first two are difficult to distinguish, both alleging tortious interference with her employment contract. The third is a cause of action for slander. Defendants move to dismiss all claims, and further move to have plaintiff's attorney disqualified.

*B. Tortious Interference With Contract*

■ Defendants move to dismiss plaintiff's claim for tortious interference with contract. Under New York law, the elements of a tortious interference claim are "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe,* 79 F.3d 1285, 1294 (2d Cir.1996) (citing *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956)).

■ Defendants argue that they may not be sued for tortious interference because Advisor is one of the partners that employed plaintiff and defendants are therefore parties to the employment contract. It is settled law in New York that a plaintiff bringing a tortious interference claim must show that the defendants were not parties to the contract. *See Minetos v. City University of New York,* 925 F.Supp. 177, 187 (S.D.N.Y.1996). Because of the "third party" requirement, a claim for tortious interference with an employment contract may not lie against agents of an employer, and by analogy, partners to a partnership, "absent a showing that they acted outside the scope of their authority." *Kosson v. Algaze,* 203 A.D.2d 112, 610 N.Y.S.2d 227, 228–29 (1994), *aff'd,* 84 N.Y.2d 1019, 622 N.Y.S.2d 674, 646 N.E.2d 1101 (1995).

■ Plaintiff argues that Hayes acted outside his authority as president of Advisory, one of the partners, when he terminated plaintiff's employment. Plaintiff alleges that the Partnership Agreement grants the exclusive power to discharge employees to the Executive Director. The Court's review of the Partnership Agreement, *see* Weisz Aff. Exh. A, supports this conclusion. Defendants concede that a partnership agreement could limit the power of partners to make employment decisions but claim that their agreement contains no such limitation. While there is no limitation specifically directed toward employment decisions in the Partnership Agreement, it does contain several clauses more broadly limiting the power of the partners. First, § 6.5, "Restrictions

on the Executive Director," states that "neither the Executive Director *nor any Partner* shall have authority to take any action not delegated to such Executive Director or Partner hereunder." Weisz Aff. Exh. A at 15 (emphasis added). In addition, § 6.8, "Scope of Authority of Partners Other Than Executive," states that

> [e]xcept as otherwise *expressly provided* in this Agreement to the contrary, neither of the Partners shall have *any authority to act for,* or to assume any obligations or responsibility on behalf of, the other Partner or the Partnership.

Weisz Aff. Exh. A at 20 (emphasis added). Under § 6.1, "Management," it is stated that

> [t]he day-to-day management and control of the business and affairs of the Partnership shall be vested in the Executive Director. Contompasis shall act as the Executive Director of the Partnership … and shall exercise and carry out such powers, authority and responsibility consistent with the terms, provisions and conditions of this Agreement and the Employment Contract.

Weisz Aff. Exh. A at 11–12. The Partnership Agreement, while not addressing explicitly the power to discharge employees, states that

> [t]he Executive Director … shall in good faith use his best efforts to conduct or cause to be conducted the ordinary and usual business and affairs of the Partnership in accordance with this Agreement … including, without limitation, … [s]electing, retaining, employing and coordinating the services of … persons necessary or appropriate to carry out the business, purposes and affairs of the Partnership. …

Weisz Aff. Exh. A at 18 (§ 6.7).

Considering all of these passages, the Court concludes that power to conduct the business of the Partnership, including employment decisions, was vested in the Executive Director alone. Defendants argue that such a reading would be illogical, in that "the Partnership would not be able to fire employees if the Executive Director's office were vacant …." Def. Reply Mem. at 3. However, the Partnership Agreement also gave Ad-

visory the unilateral power to select a new Executive Director if the position became vacant for any reason, including removal. Weisz Aff. Exh. A at 12 (§ 6.1). Thus, if there were a vacancy, the Partnership Agreement would have allowed defendants to appoint a new Executive Director, who could then exercise his or her power over employment decisions. The removal power, and the provision that "[t]he Executive Director shall consult with the Partners in advance of any significant action," *see* Weisz Aff. Exh. A at 12 (§ 6.2), reinforces the Court's conclusion that the Partners were intended to exercise decision-making power through the Executive Director, and that they had no direct authority to remove employees other than the Executive Director himself. The Court concludes that Hayes, in discharging the plaintiff, acted outside the scope of his authority and that defendants should therefore not be considered parties to the contract.

The defendants also argue that they are entitled receive the qualified privilege accorded for actions that are "economically justified." It is well established that "economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice" or "fraudulent or illegal means . . . ." *Foster v. Churchill,* 87 N.Y.2d 744, 750, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996). An economic interest arises in cases where there is a significant ownership interest in a company, as a parent company has in its subsidiary. *See Felsen v. Sol Cafe Mfg. Corp.,* 24 N.Y.2d 682, 687, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1961), *rearg. denied,* 25 N.Y.2d 896, 304 N.Y.S.2d 1031, 251 N.E.2d 152 (1969) (sole stockholder had existing economic interest to protect). Corporate agents may likewise fall under the privilege. *See Foster,* 87 N.Y.2d at 750, 642 N.Y.S.2d 583, 665 N.E.2d 153 (corporate directors protected by "economic interest" privilege).

In this case, the Court must look to defendants' interest in the Twin Rivers partnership. Advisory is an owner of a one-half interest in the partnership, and, since Advisory is wholly owned by Guilford, Guilford has a similar interest. Further, Hayes is both president of Advisory and Chief Executive Officer of Guilford. The Court finds that all three defendants have an "economic interest" that might justify interference with plaintiff's contract.

However, the defense of justification is not automatically applicable simply because there is an economic interest. "To defeat a claim of tortious interference under *Felsen,* [defendants] need to establish that their actions were taken to protect [that] economic interest." *Foster,* 87 N.Y.2d at 750–51, 642 N.Y.S.2d 583, 665 N.E.2d 153. *See also American Protein Corp. v. AB Volvo,* 844 F.2d 56, 63 (2d Cir.) ("an individual with an economic stake in the business of another may interfere with a contract that the other business has with a third person if the purpose is to protect the individual's own stake"), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). Thus, in *Foster,* the defense of economic justification was applied where "[r]espondents were clearly acting in the economic interest of Microband, which was on the brink of insolvency." *Foster,* 87 N.Y.2d at 750, 642 N.Y.S.2d 583, 665 N.E.2d 153. *See also WMW Machinery Company, Inc. v. Koerber AG,* 240 A.D.2d 400, 658 N.Y.S.2d 385 (1997) (failure of plaintiff to sell a single machine pursuant to the contract supported finding of economic justification). Hayes' letter states that plaintiff was fired for engaging in fraud; however, this assertion is disputed in the complaint, and for purposes of this motion, the Court must accept the pleadings as true. *Doe,* 15 F.3d at 266. Therefore, the Court is not able to find that defendants have proven that their actions were taken to protect their economic interest at this stage of the case. The motion to dismiss the tortious interference with contract claim must therefore be denied.

Plaintiff has alleged a second claim for "additional tortious interference." Am. Compl. at 4. As this claim is also based on tortious interference with plaintiff's employment contract, and there is no apparent material distinction between the two claims, the reasoning for denying the motion to dismiss the first tortious interference claim also applies to the second.

## C. Slander

■ Under New York law, the elements of either libel or slander include (1) a false and defamatory statement of fact, (2) regarding the plaintiff, (3) the publication of the written or oral statements to a third party, and (4) injury to the plaintiff. *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir.1993); *Robinson v. Town of Colonie*, 878 F.Supp. 387, 408 (N.D.N.Y.1995).

Plaintiff alleges that, on March 29, 1996, three days after she had been discharged, Hayes remarked to the employees at Twin Rivers that new management had been installed to stop the "old management practice of letting things go out the back door." Am. Compl. ¶ 40. Plaintiff also alleges that "defendants have made similar statements accusing plaintiff of theft at different places and times to be specified upon further discovery." Am. Compl. ¶ 43.

### 1. Accusations of Theft

■ Defendants argue that the slander claim based on the second, more general allegation that "defendants" have accused plaintiff of theft at "different places and times" should be dismissed for lack of specificity.

■ The pleading standard for an action for slander brought in federal court is governed by Fed.R.Civ.P. 8. *See Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986). The standards for sufficiency of the pleading under Rule 8 are liberal: "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1). The central concern is that the complaint "afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly*, 806 F.2d at 46 (internal quotations and citation omitted). Thus, the complaint need not contain the defamatory statements *in haec verba* ("in these words"). *Id.* Instead, the pleading is sufficient if there is "an adequate identification of the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *See Broome v. Biondi*, 1997

WL 83295 at *2 (S.D.N.Y. Feb.10, 1997)(citing *Reeves v. Continental Equities Corp. of Am.*, 767 F.Supp. 469, 473 (S.D.N.Y.1991)).

Here, plaintiff has alleged only that "defendants" made statements. It is not clear, therefore, whether this refers to Hayes or to other parties capable of speaking on behalf of the corporate defendants. Further, plaintiff has not alleged any specific places or times, nor has plaintiff alleged to whom the statements were made. In fact, it is clear that plaintiff has no specific statements in mind: "[Plaintiff] has not yet been able to identify other specific conversations in which defendants accused her of larceny, but these conversations can be amplified and identified during discovery." Pl. Mem. at 9. Plaintiff has clearly not made "an adequate identification of who made the communication, when it was made, [or] to whom it was communicated." *Broome*, at *2. Her claim for defamation based on unspecified statements regarding accusations of theft must therefore be dismissed.

### 2. Hayes' Statement On March 29

■ Defendants argue that Hayes' March 29 statement to the Twin Rivers employees that he would not continue the "old management practice of letting things go out the back door" cannot support a claim for slander because the statement did not amount to slander *per se*. Statements that tend to disparage or injure plaintiff in her trade or profession are slanderous *per se*. *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir.1985); *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992). While special damages is normally a pleading requirement, where statements are defamatory *per se*, the law presumes that damages will result, and they need not be alleged. *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir.1993).

■ In interpreting whether the alleged phrase is disparaging to plaintiff's professional reputation, the Court's role is somewhat limited. As the Second Circuit stated in *Kelly*:

[o]n a motion to dismiss ..., the issue is not whether the court regards the language as libelous, but whether it is reason-

ably susceptible of such a construction. 'The court may not ... interfere with the jury's role by treating as nondefamatory a statement that a reasonable juror may fairly read *in context* as defamatory.'

806 F.2d at 46 (citation omitted). *See also Howard v. Alford,* 229 A.D.2d 996, 645 N.Y.S.2d 208, 208 (1996) ("the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation."). In particular, to establish slander *per se,* statements reasonably understood as "imput[ing] fraud, dishonesty, incompetence, incapacity, or unfitness in the performance of [plaintiff's] trade" are required. *Howard,* 645 N.Y.S.2d at 208. Here, the reference to a "practice" of having things go "out the back door," though not entirely unambiguous, could reasonably be understood as referring to the secret and dishonest sales or distribution of the company's merchandise.

*Howard,* cited by defendants, is not to the contrary. That case considered the statement that "these people weren't producing as we thought they should." *Id.* The court held that "[t]he mere expression that plaintiff had not met his employer's expectations is not slanderous ... per se." *Id.* However, the statement alleged in this case can reasonably be understood to impute a dishonest character to plaintiff's business activities that goes beyond a mere failure to live up to expectations. Thus, plaintiff has sufficiently alleged a statement disparaging to her professional reputation and need not plead special damages.

■ Defendants also argue that the statement was privileged. A qualified privilege arises when a communication is made to persons who have some common interest in the subject matter. *Foster v. Churchill,* 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, .665 N.E.2d 153 (1996).

Cases presented by the defendants in support of their claim for privilege are not applicable here. In both *Roberts v. Oellrich and Behling Inc.,* 223 A.D.2d 860, 636 N.Y.S.2d 205 (1996) and *Boyle v. Stiefel Laboratories, Inc.,* 204 A.D.2d 872, 612 N.Y.S.2d 469 (1994), the privileged communications were made by employees for the purpose of bringing the misconduct of a co-employee to light so that it can be properly responded to by those in authority. *See, e.g., Roberts,* 636 N.Y.S.2d at 205 (statement made by store employee to manager that plaintiff had taken a six-pack of soda from the store without paying was privileged); *Foster,* 87 N.Y.2d at 751, 642 N.Y.S.2d 583, 665 N.E.2d 153 (document between directors detailing why chief executive should be discharged for cause was privileged). Here, defendants had already responded to the alleged problem by discharging the plaintiff; therefore, the comments were not necessary to reveal misconduct as in *Roberts* and *Foster.*

■ Nevertheless, the Court finds that the privilege should apply. The "common interest" privilege arises not only where there is a common interest, but also when a party speaks "upon a subject ... in connection with which he has a legal, moral or social duty to speak, and the communication is made to a person having a corresponding interest or duty." *Kilcoin v. Wolansky,* 75 A.D.2d 1, 428 N.Y.S.2d 272, 275 (1980), *aff'd,* 52 N.Y.2d 995, 438 N.Y.S.2d 289, 420 N.E.2d 87 (1981). Here, Hayes had a clear duty as a partner to address misconduct and establish lawful business policies. The employees of the partnership had a corresponding duty to live up to those policies and help enforce them. Hayes made his statement to a gathering of employees, and addressed the alleged existence of a previous practice of misconduct. Under such circumstances, the Court finds that the statement falls under the "common interest" qualified privilege as a matter of law.

■ This does not end the inquiry, however. To defeat a qualified privilege, a plaintiff must prove that the defendant spoke with malice. In connection with slander, plaintiff can prove malice either by showing that the motivation for speaking was spite or ill will (common law malice) or that the statements were made with a high degree of awareness of their probable falsity (constitutional malice). *Foster,* 87 N.Y.2d at 752, 642 N.Y.S.2d 583, 665 N.E.2d 153. *See also Wachtel v.*

*Storm*, 796 F.Supp. 114, 116 (S.D.N.Y.1992) (malice established by showing "reckless disregard [of] whether [statement is] false or not.").

 Plaintiff has alleged that Hayes was aware of the falsity of his statement at the time that he made it. Defendants argue that this allegation is conclusory, in that plaintiff has alleged no facts from which awareness of falsity could be deduced.

As noted above, under the liberal pleading standards of Fed.R.Civ.P. 8, "[t]he test of a complaint's sufficiency is whether it is detailed and informative enough to enable defendant to respond and to raise the defense of res judicata if appropriate." *Kelly*, 806 F.2d at 46 (citations and internal quotations omitted). The Court notes also Fed.R.Civ.P. 9(b) which states that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Plaintiff's allegations that the statement was false and that Hayes was aware of its falsity provides a sufficient basis for defendants to respond with defenses at the pleading stage. Thus, such allegations are sufficient to withstand a motion to dismiss notwithstanding an absence of facts supporting the inference of awareness. *See Wachtel*, 796 F.Supp. at 116 (by alleging that when defendant made statements, he knew them to be false, plaintiff satisfied the malice requirement).

Defendants rely upon a New York Supreme Court case, *Rojas v. Debevoise & Plimpton*, 167 Misc.2d 451, 634 N.Y.S.2d 358 (N.Y.Sup.Ct.1995) which held that a plaintiff must "plead facts showing that the statement was made with a high degree of awareness of its probable falsity." *Id.* 634 N.Y.S.2d at 362. However, the case which the court in *Rojas* cited for this proposition, *Liberman v. Gelstein*, held that the record was insufficient "to raise a triable issue of fact" as to malice, despite ample opportunity given to plaintiff to discover such facts. *Liberman*, 80 N.Y.2d 429, 439 n. 3, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992). The court did not require such facts at the pleading stage. Such authority is thus clearly inapplicable in reviewing a motion to dismiss before any discovery has occurred. The Court must therefore deny defendants' motion to dismiss the claim of slander based on Hayes' March 29 statement.

## III. Motion For Disqualification

Defendants move to have plaintiff's attorney, Richard L. Weisz, Esq. ("Weisz"), disqualified for conflict of interest.

### A. Facts

The parties have submitted affidavits which reveal the following undisputed facts.

Weisz has provided legal services directly to Contompasis and Keryakos for a number of years. Weisz Aff. Opp. Disqual. ¶ 4. In 1991, Weisz represented Contompasis in the negotiations with Guilford regarding forming the Twin Rivers Partnership. During the period after the formation of the partnership, Weisz represented Twin Rivers on certain occasions. Weisz alleges that "most of the work" done for the partnership involved representing Twin Rivers in a lawsuit brought by Peter Wick who claimed a right to equipment held by the partnership. *Id.* at ¶ 14. The matter was settled on or about February 6, 1995. *Id.*

In addition, and more critical to the instant motion for disqualification, Weisz represented Twin Rivers as the attorney of record in an adversary case brought pursuant to a Pennsylvania bankruptcy proceeding. *Id.* at ¶ 15. The action, commenced by the Trustee, sought recovery from Twin Rivers as well as several other parties. Weisz submitted an answer on October 7, 1994, and was told by the judge to retain local counsel if the Trustee pursued the matter.

Weisz alleges that his subsequent involvement in the case was limited to a letter he submitted to the Trustee arguing that the action against Twin Rivers should be discontinued.

The parties disagree over whether or not Twin Rivers eventually settled the case. The record reveals that on April 14, 1997, the bankruptcy judge entered an order dismissing the case as against Twin Rivers and two other defendants for failure to prosecute. Weisz Aff. Opp. Disqual. Exh. F. Thus, it appears that Weisz may have formally been

the attorney representing Twin Rivers up to that time. On this basis, and given that the instant action was commenced on February 7, 1997, more than two months prior to the termination of the bankruptcy action, defendants argue that Weisz should be disqualified.

## B. Discussion

Defendants argue that Weisz's simultaneous representation of the partnership and an employee bringing suit against one of the partners violates Weisz's duty of undivided loyalty, and that Weisz should therefore be disqualified from representing plaintiff in the current action.

■■■ In this Circuit, a motion to disqualify is committed to the discretion of the district court. *See Marshall v. State of New York Div. of State Police*, 952 F.Supp. 103, 106 (N.D.N.Y.1997). The burden of establishing the need for disqualification is on the moving party. *See Rosman v. Shapiro*, 653 F.Supp. 1441, 1444 n. 5 (S.D.N.Y.1987). Such motions are generally viewed with disfavor and a party seeking disqualification must therefore meet a high standard of proof before the motion will be granted. *Id.* (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983)). However, it is also well-established that any doubts created by the movant's proffer must be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975).

The Second Circuit has articulated two rules with respect to disqualification. The more stringent of the two, known somewhat misleadingly as the "per se" rule, pertains to situations where representation of the moving client is continuing at a time when the attorney brings an action adverse to the moving client's interests. In such a case, the "adverse representation is prima facie improper" and the attorney in question "must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386–87 (2d Cir. 1976). Where the moving party is a former client, the Second Circuit requires the moving party to show that there is a "substantial relationship" between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit and that the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983). For purposes of determining whether an attorney-client relationship is a former or continuing one, a court looks to the time that the conflict arose, not the time when the motion to disqualify was brought. Here, there appears to have been an overlap between Weisz's representation of Twin Rivers and the representation of plaintiff, placing Weisz's representation of Twin Rivers in the continuous category.

■■ The Second Circuit has added one further restriction on the application of the "per se" rule, however. If the moving client is a "vicarious" client, e.g. a member of an organization or entity that is being represented by the attorney, as opposed to a "traditional" client, then the more lenient "substantial relationship" rule applies even if representation of the adverse parties was overlapping. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir.1981). Thus, to determine whether to apply the "per se" rule or the "substantial relationship" rule, the Court must decide if the defendants were "traditional" clients.

### 1. "Traditional" vs. "Vicarious" Client

In *Glueck*, the Second Circuit found the "per se" rule is properly applied "when a lawyer undertakes to represent two adverse parties, both of which are his clients in the traditional sense. But when an adverse party is only a vicarious client by virtue of membership in an association, the risks against which Canon 5 guards will not inevitably arise." *Glueck*, 653 F.2d at 749 (finding that a law firm representing the American Bar Association need not decline to represent a client injured by a member of the association). *See also Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1083 (S.D.N.Y.1989) (rationale behind Second Circuit's rules pertaining to disqual-

ification is that "violations of Canons 4 and 5, by their very nature, give rise to a high probability that taint of trial—the real litmus test—might occur.").

■■ The test to be applied in determining whether a party is a "traditional" client is "whether there exist sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict involved" in representing a new party against the former client. *Id.*, 653 F.2d at 748–49 (citations and internal quotations omitted). This test applies to determine whether a parent corporation should be considered a traditional client of an attorney who has represented the subsidiary. *See Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 540 (S.D.N.Y.1989). It is therefore the appropriate test to determine if representation of a partnership should bar an attorney from representing a client adverse to the interests of the partners.

■■ In *Hartford Accident*, the court found that the parent company should be considered a client of the attorney representing the subsidiary in product liability litigation "where the parent attached considerable importance to the product liability litigation ... and accordingly supervised the litigation." *Id.*, 721 F.Supp. at 540. The current case is clearly distinguishable. Here, defendants were not even aware of Weisz's representation of Twin Rivers in the bankruptcy action until October of 1996, two years after Weisz submitted an answer in that proceeding. Emken Aff. at ¶ 5; Weisz Aff. Opp. Disqual. at ¶ 15. Thus, it is clear that they did not attach importance to the bankruptcy action or supervise Weisz's participation in it. Similarly, they concede to being aware of Weisz's representation of Twin Rivers in the Peter Wick action only after the matter was concluded. Phillips Supp. Aff. ¶ 3. Thus, they have not provided any evidence showing that there exist sufficient aspects of an attorney-client relationship to consider them "traditional" clients of Weisz.

■■ Defendants chiefly rely on *Stratagem Development Corp. v. Heron Intern. N.V.*, 756 F.Supp. 789 (S.D.N.Y.1991), in which the court held that "[t]he duty [of undivided loyalty] applies with equal force where the client is a subsidiary of the entity to be sued." *Id.* at 792. However, this statement cannot be stretched to mean that a corporation and its owners (or a partnership and its partners) should always be considered the same for disqualification purposes. The Court believes that such a rule flies in the face of *Glueck*'s requirement that only "traditional" clients require application of the "per se" rule. Moreover, the two cases cited in *Stratagem, Glueck v. Jonathan Logan, Inc.*, 512 F.Supp. 223, 227 (S.D.N.Y.), *aff'd*, 653 F.2d 746 (2d Cir.1987) and *Rosman*, do not support such a rule. When *Glueck* was reviewed by the Second Circuit, that court did not establish a bright-line rule with regard to subsidiaries. Rather, as previously noted, it mandated a factual inquiry into the nature of the relationship between the attorney and the party claiming client status. 653 F.2d at 749. *Rosman*, the second case relied upon by *Stratagem*, is entirely consistent with this holding, for the court in *Rosman* found that, even in the case of a corporation which is held by two shareholders with equal interests and an attorney who has represented the corporation, "the issue of corporate versus individual representation must be decided on a case by case basis." *Rosman*, 653 F.Supp. at 1445 n. 8.

*Rosman* also reinforces the conclusion that defendants have not made a sufficient showing in this case. The court there rested its disqualification order in part on its conclusion that it was "reasonable for each shareholder to believe that the corporate counsel [was] in effect his own individual attorney." *Rosman*, 653 F.Supp. at 1445. Here, there is no allegation that defendants believed that Weisz was their own attorney. In light of this, and in the absence of any other evidence provided by defendants to suggest an attorney-client relationship, the Court finds that defendants should be considered vicarious clients only, and that the appropriate test for conflict of interest is the "substantial relationship" test.

*2. Application of the Substantial Relationship Test*

■■ Under the "substantial relationship" test, disqualification should be granted "upon

**204**

a showing that the relationship between the issues in the prior and present cases is 'patently clear' [or] 'essentially the same.'" *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978). The issues involved in the bankruptcy case involving a creditor's claim against Twin Rivers for $14,372.94 and opposed on legal grounds have no apparent relation to issues involved in plaintiff's slander and tortious interference claims. Defendants' motion to disqualify Weisz as plaintiff's attorney must therefore be denied.

Accordingly, it is hereby

ORDERED that defendants' motion to dismiss plaintiff's tortious interference claims is DENIED; and it is further

ORDERED that defendants' motion to dismiss plaintiff's slander claim is GRANTED in part and DENIED in part; and it is further

ORDERED that defendants' motion to disqualify Richard L. Weisz as plaintiff's attorney is DENIED; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.