**James KEADY, Plaintiff,**

v.

**NIKE, INC. and ST. John's University, Defendants.**

**No. 99 CIV. 11460(AGS).**

United States District Court, S.D. New York.

Sept. 21, 2000.

Jeffrey M. Harmatz, New York City, Joel D. Joseph, Washington, DC, for Plaintiff.

Raymond G. McGuire, Laura Sack, New York City, for St. Johns University.

Daniel Weisberg, Karen Solimando, New York City, for Nike, Inc.

## OPINION AND ORDER

SCHWARTZ, District Judge.

In this action, plaintiff, a former employee of defendant St. John's University, alleges that defendants forced him to resign for refusing to wear athletic apparel bearing the Nike logo. Currently before the Court are defendants' motions to dismiss, and plaintiff's cross-motion for leave to amend his complaint. For the reasons set forth below, defendants' motions are granted and plaintiff's motion is denied.

## I. Factual Background

Plaintiff James Keady is an individual residing in the State of New York. (Complaint for Declaratory, Injunctive, Compensatory and Punitive Damages ("Compl.") ¶ 2.) Defendant Nike, Inc. ("Nike") is a corporation organized under the laws of Oregon with its principal place of business in Oregon and offices in New York. (*Id.* ¶ 3.) Defendant St. John's University ("St. John's" or the "University") is a university located in Jamaica, New York, receiving state and federal funding that includes tax exemptions and grants. (*Id.* ¶ 4.)

During 1997 and 1998, plaintiff was a graduate student in theology at St. John's, enrolled in a master's program in pastoral theology with a concentration in social justice. (*Id.* ¶ 9.) On July 8, 1997, plaintiff and St. John's entered into an "Administrative Assistantship Agreement" (the "Agreement"), pursuant to which plaintiff (i) was engaged as an administrative assistant in the office of men's soccer in the athletics department, (ii) received $4,000 over the term of the agreement, and (iii) received a tuition waiver for up to 12 credit hours per semester for two semesters. (*Id.* ¶ 7, Ex. 1 ¶¶ 1, 4.) Pursuant to the Agreement, plaintiff agreed to perform his duties "diligently and cooperatively for approximately 20 hours a week," and render his services in a "scholarly and efficient manner." (*Id.*, Ex. 1 ¶ 2.) The parties further agreed that the Agreement could be terminated by certain University officials "at any time" if, in their judgment,

plaintiff "failed to perform any of the foregoing provisions of this Agreement." (*Id.*, Ex. 1 ¶ 5.) The term of the agreement was from September 1, 1997 to May 15, 1998. (*Id.*)

As part of his graduate work, plaintiff wrote a research paper in which he considered whether Catholic universities should receive compensation from Nike because of the company's labor practices in Third World countries. (*Id.* ¶ 10.) The paper questioned Nike's alleged business practices, and the moral implications of St. John's business association with Nike on account of those practices. (*Id.* ¶ 11.) The paper also questioned an alleged "anti-defamation clause" in Nike's contracts with universities, which restricts the ability of coaches and administrators to be publicly critical of Nike. (*Id.*)

In February 1998, it became public that St. John's and Nike were negotiating a contract pursuant to which St. John's would require coaches and players to exclusively wear athletic apparel bearing the Nike logo in exchange for the provision of such apparel and certain funds to the University. (*Id.* ¶ 12; Memorandum of Law in Support of Defendant Nike, Inc.'s Motion to Dismiss at 1.) Plaintiff publicly opposed this contract. Specifically, he wrote an editorial in which he was critical of the contract, which, after being refused by a St. John's publication entitled *St. John's Today*, was published in the St. John's student newspaper entitled *The Torch* in February 1998. (Compl. ¶¶ 13–14.) On February 10, 1998, prior to an interview with *The Torch* concerning plaintiff's editorial, plaintiff was purportedly told, by a person plaintiff does not identify, that he could not talk to the newspaper. (*Id.* ¶ 15.) He also received a business memo from David Masur ("Masur"), St. John's men's soccer coach, in which Masur (i) chides plaintiff for "publicly ridiculing St. John's University Athletic Department," (ii) recommends plaintiff assist another employee of the University "in her research concerning the Nike relation-

ship," (iii) states that plaintiff should "support our programs and *not* utilize your energy in demonstrative fashions," (iv) asserts that there are people at the University "willing to work with you in fostering a unified relationship" with Nike, and (v) urges plaintiff to enhance St. John's "existing position with the proper diplomacy and channels of communication." (*Id.* ¶ 15, Ex. 2.)

Between February 1998 and plaintiff's eventual resignation from his post on June 24, 1998, plaintiff claims that he "was threatened with retaliation by university officials if he continued to refuse to wear Nike logo equipment and if he continued to speak out concerning the contract between [St. John's] and [Nike]." (*Id.* ¶ 16.) He also alleges that Nike "pressured [St. John's] to discredit [plaintiff] and take other steps to stop him from speaking against Nike and force him to wear Nike logo clothing or resign." (*Id.* ¶¶ 17–18.)

In early May 1998, plaintiff agreed to extend the Agreement and stay on as administrative assistant for another year. (*Id.* ¶ 19.) Nevertheless, plaintiff alleges that on May 12, 1998, Masur told him to "[w]ear Nike and drop the issue, or resign." (*Id.* ¶ 20.) On June 24, 1998, after the formalization of Nike's contract with St. John's discussed *supra,* plaintiff resigned. (*Id.* ¶¶ 21–22.) In his resignation letter, plaintiff stated *inter alia* that: (i) the reason for his resignation was "a troubling matter of conscience"; (ii) he felt that St. John's was "seriously compromising its mission statement and is in direct violation of Catholic Social teaching" through its relationship with Nike; (iii) acknowledged that Nike "has made some strides in addressing [ ] human rights violations ... but they have yet to address the issue of a living wage"; and (iv) stated that the payment of a "living wage" was his chief concern. (*Id.* ¶ 22, Ex. 3.) This action followed.

Plaintiff commenced this action on November 19, 1999, alleging that defendants forced him to resign for refusing to wear Nike athletic apparel. The Complaint asserts causes of action against both defendants alleging (i) violations of his civil rights under 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (ii) criminal conspiracy against those rights under 18 U.S.C. § 241, and (iii) defamation. Plaintiff asserted separate causes of action against St. John's for (iv) employment discrimination under the New York State Human Rights Law and New York City Human Rights Law, and for (v) breach of contract.

St. John's subsequently moved to dismiss the Complaint against it in its entirety under Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 12(c) ("Rules 12(b)(1), 12(b)(6) and 12(c)"), for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted. Nike moved to dismiss all claims against it pursuant to Rule 12(b)(6). Both defendants subsequently filed answers to the Complaint.

## II. Discussion

### A. Legal Standard Governing Rule 12 Motions to Dismiss

In deciding a motion to dismiss, the Court must view the Complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations as true. *See Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996). The Court's function is not to weigh the evidence that might be presented at trial, but merely to determine whether the Complaint itself is legally sufficient. *See Festa v. Local 3 Int'l Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). Under Rule 12(b)(6) specifically, dismissal is inappropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding a motion under Rule 12(b)(6), the court may consider "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint, as well as [ ] matters of which judicial

notice may be taken." *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.,* 155 F.3d 59, 67 (2d Cir.1998).

## II. Plaintiff's Civil Rights Claims

### A. Section 1983

In his first cause of action, plaintiff alleges that both defendants violated 42 U.S.C. § 1983 ("Section 1983") without alleging any specific denial of rights.[1] Section 1983 authorizes a party who has been deprived of a federal right under the color of state law to seek relief through "an action at law, suit in equity, or other proper proceeding for redress." *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). Because the Court finds that plaintiff has not and cannot establish that either defendant acted under color of state law, it dismisses his Section 1983 claim for lack of subject matter jurisdiction.

■ Under Section 1983, liability attaches only to those wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Nat'l Collegiate Athletic Assoc. v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) (quoting *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). As the Supreme Court stated in *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." Moreover, "the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint." *Powe v. Miles,* 407 F.2d 73, 81 (2d Cir.1968) (citing *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)); *Grossner v. Trustees of Columbia Univ.,* 287 F.Supp. 535, 548 (S.D.N.Y.1968).

■ While plaintiff does not affirmatively allege state action in the context of his Section 1983 claim, the Complaint states that St. John's receives state and federal funding that includes tax exemptions and grants. (Compl.¶ 4.) As to St. John's, this allegation is insufficient to give rise to federal jurisdiction under Section 1983, because mere financial assistance from a public authority to a private institution does not constitute state action.[2] *See Rendell–Baker v. Kohn,* 457 U.S. 830, 840, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (noting that, for state action to be found, state must exercise "coercive power" or give "significant encouragement" over the private entity); *Blum v. Yaretsky,* 457 U.S. 991, 1010–11, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (finding that nursing home was not state actor even though state subsidized its operating and capital costs and paid Medicaid for more than 90 percent of its patients); *Grossner, supra,* 287 F.Supp. at 547–48 (finding that "receipt of money from the State is not, without a good deal more, enough to make the recipient an agency or instrumentality of the Government" as required for state action); *Altschuler v. Univ. of Penn. Law Sch.,* No. 95 Civ. 249, 1997 WL 129394, at *16 (S.D.N.Y. Mar. 21, 1997) (noting that "[e]xtensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor"). As to

1. This count merely incorporates by reference the facts alleged in the Complaint, reproduces the statute, and states that "[d]efendants violated 42 U.S.C. § 1983." (Compl.¶¶ 23–25.)

2. In his opposition, plaintiff requests that he be allowed to conduct "reasonable discovery" in order to determine "the quality and quantity of government funding provided to St. John's University." (Memorandum of Law in Opposition to the Motions to Dismiss the Complaint ("Pl.'s Mem.") at 3.) The Court denies this request, which would be futile in any event given that such funding cannot serve as a basis for a finding of state action in this case.

Nike, plaintiff does not allege any link at all between Nike and the state, and any attempt to premise his Section 1983 claim on Nike's contractual relationship with St. John's would fail because there is no state action as to St. John's. Moreover, the Complaint identifies no link between the alleged state action and the activities of defendants that allegedly resulted in plaintiff's deprivation of rights. Thus, plaintiff's Section 1983 claim must fail.[3]

## B. Sections 1985 and 1986

### 1. Section 1985

■ The deficiencies of plaintiff's second claim, brought pursuant to 42 U.S.C. § 1985(3) ("Section 1985(3)") are similar to those of his Section 1983 claim. Section 1985(3) is designed to remedy conspiracies, based on class-based discriminatory animus, that deprive victims of their constitutional rights. *See Jenkins v. Arcade Bldg. Maintenance,* 44 F.Supp.2d 524, 531–32 (S.D.N.Y.1999). In order to establish a claim under Section 1985(3), a plaintiff must plead the following elements: (i) a conspiracy; (ii) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; (iii) an act in furtherance of the conspiracy; and (iv) a deprivation of a right covered by the Constitution or other laws. *See Brown v. City of Oneonta,* 195 F.3d 111, 123 (2d Cir.1999); *United Bhd. Of Carpenters v. Scott,* 463 U.S. 825, 828, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). The alleged conspiracy must be based on discriminatory racial or other class-based animus. *See Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

■ Because plaintiff has not satisfactorily alleged the above elements, the Court dismisses his Section 1985(3) claim under Rule 12(b)(6).[4] First, plaintiff has not alleged the existence of a conspiracy or an act in furtherance of such, nor do the facts as pleaded allow the Court to infer such allegations. The only allegation which could plausibly be construed as alleging a conspiracy is plaintiff's conclusory claim that "Nike, Inc. and its employees and agents, pressured St. John's University to discredit [plaintiff] and take other steps to stop him from speaking against Nike and force him to wear Nike logo clothing or resign."[5] (Compl.¶ 17.) However, this allegation is wholly insufficient to survive a motion to dismiss. The Second Circuit "has repeatedly held that complaints containing only 'conclusory', 'vague' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Cuoco v. Hershberger,* No. 93 Civ. 2806(AGS), 1996 WL 648963, at *9 (S.D.N.Y. Nov.6, 1996) (citing cases).

■ Second, plaintiff does not allege that the discrimination against him resulted from his membership in a particular class of persons whose rights are specifically protected by Section 1985. Rather, the alleged discrimination appears directed at plaintiff as an individual.[6] Moreover,

---

**3.** Even if state action were found, plaintiff's Complaint fails to state a claim on which relief can be granted, because he fails to identify any constitutional rights of which he was allegedly deprived. *See Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.1987); *Kerman v. The City of New York,* No. 96 Civ. 7865, 1999 WL 509527, at *8 (S.D.N.Y. July 19, 1999); *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999) (citations omitted).

**4.** Similar to his Section 1983 claim, plaintiff's Section 1985(3) count merely incorporates by reference the facts alleged in the Complaint, reproduces the statute, and states that "[d]efendants violated 42 U.S.C. Section 1985." (Compl.¶¶ 26–28.)

**5.** In his opposition papers, plaintiff states that "Nike's pressuring of St. John's and St. John's response to that pressure, is indeed a conspiracy against [plaintiff]." (Pl.'s Mem. at 4.) However, (i) such an allegation is not inferrable from the Complaint, and (ii) even if it were, it falls short of conspiracy because it does not indicate an agreement, or any overt act in furtherance of that agreement. *See Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir. 1999) (citing *Powell v. Workmen's Compensation Bd.,* 327 F.2d 131, 137 (2d Cir.1964)).

**6.** Plaintiff states in his opposition that another individual, St. John's Professor Surlis, shares his beliefs. (Pl.'s Opp. at 4). However, this information does not appear in the Com-

plaintiff's "campaign for justice," on account of which plaintiff alleges he was constructively fired, centers on his ethical or sociopolitical, rather than religious views. Such discrimination is not protected under Section 1985. *See Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir. 1989) (affirming dismissal of plaintiff's Section 1985 claim where plaintiff alleged that defendants had conspired to discriminate against him for political reasons); *Citizens Accord, Inc. v. Town of Rochester*, No. 98 Civ. 0715, 2000 WL 504132, at *8 (S.D.N.Y. Apr.18, 2000).

■ Third, plaintiff's Section 1985(3) claim must be dismissed because he has failed to allege that he was deprived of any constitutional or federal statutory rights. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir.1996); *Brown v. Resolution Trust Co.*, No. 93 Civ. 7874, 1995 WL 43674, at *4 (S.D.N.Y. Feb.2, 1995). In his opposition papers, plaintiff suggests that defendants conspired to infringe his first amendment rights. (Pl.'s Mem. at 3–4.) Even if such allegation could be gleaned from the Complaint, it is insufficient to state a Section 1985 claim, because state action—which as noted *supra* is not present here—is required for a violation of such rights. *See Scott, supra*, 463 U.S. at 830, 103 S.Ct. 3352 ("[A]n alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state."); *Emanuel v. Barry*, 724 F.Supp. 1096, 1100 (E.D.N.Y.1989) (stating that "state action was necessary [in the First Amendment context] for a claim under Section 1985(3)").

### 2. Section 1986

Plaintiff's third cause of action alleges that defendants violated 42 U.S.C. § 1986

("Section 1986").[7] The Court dismisses this claim because it is dependent on plaintiff's failed Section 1985 claim.

Section 1986 states *inter alia* that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful acts be committed, shall be liable to the party injured ..." 42 U.S.C. § 1986. Because the statute indicates that there can be no violation of Section 1986 absent a Section 1985 violation, and plaintiff has not sufficiently stated a Section 1985 claim, his Section 1986 claim must be dismissed under Rule 12(b)(6). *See Brown, supra*, 195 F.3d at 123 (affirming dismissal of Section 1986 claim because "a 1986 claim must be predicated on a valid 1985 claim").

### C. Criminal Conspiracy Under 18 U.S.C. § 241

■ Plaintiff's fourth cause of action alleges violations of 18 U.S.C. § 241 ("Section 241"), a criminal statute "designed for the protection of great rights won" after the Civil War against conspiracies to deprive citizens of those rights. *United States v. Williams*, 341 U.S. 70, 87, 71 S.Ct. 581, 95 L.Ed. 758 (1951). Only the United States as prosecutor can bring a complaint under this statute, as it does not provide for a private right of action for damages. *See Garcia v. NYPD 41*, No. 95 Civ. 10471, 1997 WL 563809, at *3 (S.D.N.Y. Sept.10, 1997) ("Section 241 is a purely criminal statute; thus, there is no private right of action under 241.") Plaintiff's suggestion that this Court is somehow able "to allow private civil suits to enforce this criminal law" lacks any basis in the law and is therefore unavailing.

plaint, and moreover, does not suggest that anyone but plaintiff was disadvantaged by defendants' actions as alleged in the complaint.

7. Similar to his Section 1983 and 1985 claims, plaintiff's Complaint merely incorporates by reference the facts alleged in the Complaint, reproduces the statute, and states that "[d]efendants violated 42 U.S.C. § 1986." (Compl. ¶¶ 29–31.)

(Pl.'s Mem. At 4–5.) Therefore, his Section 241 claim must also be dismissed.

## D. Section 1981a

■ Plaintiff's fifth cause of action alleges that defendants "have violated 42 U.S.C. Section 1981a and are liable to plaintiff for compensatory and punitive damages." (Compl.¶ 37.) However, this statute provides for no independent cause of action, but merely expands the remedies available to successful litigants filing claims pursuant to Title VII of the Civil Rights Act of 1964, by allowing them to recover compensatory and punitive damages where recovery under Section 1981 for race discrimination is not available. *See* Civil Rights Act of 1991, 42 U.S.C. § 1981a; *Smith v. Local Union 28 Sheet Metal Workers*, 877 F.Supp. 165, 172 (S.D.N.Y.1995) ("[A]lthough § 1981 affords an additional federal remedy against employment discrimination, it provides '[n]o greater or lesser protection' than Title VII.") (quoting *Carrion v. Yeshiva University*, 535 F.2d 722, 729 (2d Cir.1976)); *Varner v. Illinois State Univ.*, 150 F.3d 706, 718 (7th Cir.1998) ("The plain language of 1981a shows that Congress intended to create an additional remedy for Title VII violations, as opposed to a separate cause of action."). Because plaintiff has invoked Section 1981a as an independent cause of action, and has not filed a Title VII claim, his Section 1981a claim must be dismissed.

## E. Plaintiff's State Law Claims

Because the Court has dismissed each of plaintiff's federal claims, it must consider whether to retain jurisdiction over plaintiff's state law claims, which also invoke the Court's consideration of the employment relationship between plaintiff and St. John's.

■ Where it has original jurisdiction over a claim, a federal district court may exercise supplemental jurisdiction over all other claims that are so related to that claim that they form part of the same case and controversy. 28 U.S.C. § 1367(a). State claims are deemed to be part of the same case or controversy as a federal claim if they " 'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding." *People by Abrams v. Terry*, 45 F.3d 17, 23 n. 7 (2d Cir.1995) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). In deciding whether to exercise supplemental jurisdiction, the Court should consider whether an exercise of jurisdiction is justified by the interests of judicial economy, convenience, fairness to litigants, and comity. *See Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. 1130. Where all federal claims have been dismissed before trial, these factors shall generally "point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Shchegol v. Rabinovich*, No. 98 Civ. 5616, 1999 WL 398025, at *8 (S.D.N.Y. June 9, 1999). However, the principle as expressed in *Cohill* is not "a mandatory rule to be applied inflexibly in all cases." *Cohill, supra*, 484 U.S. at 350 n. 7, 108 S.Ct. 614.

The Court finds that the exercise of supplemental jurisdiction is warranted in this case. The federal and state law claims arise out of equivalent facts concerning plaintiff's employment with and subsequent resignation from St. John's. Because the Court has held several pretrial conferences related to the pending causes of action, making it familiar with the alleged facts, and the state law issues have been briefed by the parties, both judicial economy and fairness to the litigants militates toward exercising supplemental jurisdiction. *See ABF Capital Management v. Askin Capital Management, L.P.*, 957 F.Supp. 1308, 1322–23 (S.D.N.Y.1997) (exercising supplemental jurisdiction over state claims on grounds of judicial economy and fairness where all federal claims were dismissed pursuant to Rule 12(b)(6)); *The Philatelic Found. v. Kaplan*, 647 F.Supp. 1344, 1348 (S.D.N.Y. 1986) (exercising supplemental jurisdiction

over state claims given the "particular circumstances of this litigation" and the familiarity of the court with the issues and the proceedings). Moreover, given this Court's substantial experience and familiarity with New York law, it is as capable as a New York state court in adjudicating plaintiff's state claims, and is as convenient a forum for the parties.

### 1. New York Human Rights Laws

Plaintiff's sixth claim, for employment discrimination, asserts violations of the New York State and New York City Human Rights Laws, respectively Section 296 of the Executive Law and Section 8–107 of the Administrative Code of the City of New York. Specifically, plaintiff contends that St. John's "failed to rehire and otherwise discriminated against plaintiff on account of his religious beliefs," specifically "because his views of Catholicism differ from the university's." (Compl.¶ 41.)

 Plaintiff's Complaint fails to satisfy the pleading requirements for claims of unlawful discrimination as required by both statutes. To state a prima facie case of employment discrimination, a plaintiff must allege that: (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).[8] Moreover, in this Circuit, complaints under civil rights statutes must contain "some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that

shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987); *cf. Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) ("It is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act, fails to state a claim under Rule 12(b)(6).").

 First, as stated *supra* in the context of plaintiff's Section 1985(3) claim, plaintiff does not allege that the discrimination against him resulted from his membership in a particular class of persons whose rights are specifically protected. Rather, his allegations support the conclusion that defendants' alleged discrimination appears directed at plaintiff as an individual. Second, plaintiff has failed to allege facts indicating that St. John's either discharged or failed to rehire him. Rather, the record reflects that plaintiff resigned from his post in June 1998 after he and St. John's had agreed to extend his contract for another year. (Compl.¶ 19.) The record does not reflect that plaintiff ever reapplied for a position at the University, nor that the University would have denied such an application. Third, plaintiff has alleged no facts that would give rise to an inference of discrimination. The disagreement between the parties was grounded not in plaintiff's religious beliefs, which, like those espoused by St. John's are based on the teachings of the Catholic Church, but in the application of those teachings to St. John's social role and business activities.[9] Moreover, plaintiff's resignation was not based on his religious beliefs, but what plaintiff described as a "troubling matter of conscience" based on the fact that St. John's was "seriously

---

**8.** The identical standards apply to employment discrimination claims brought under Title VII, Title IX, Executive Law § 296, and the Administrative Code of the City of New York. *See Weinstock, supra,* 2000 WL 1200161, at *25.

**9.** In *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Supreme Court defined "religious belief," for

the purposes of constitutional protection, as not "merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living." The record reflects that the beliefs which are the subject of this action are plaintiff's personal preferences or interpretations for the correct application of organized religious teachings, which are not subject to protection as "religious beliefs."

compromising its mission statement and is in direct violation of Catholic Social teaching by being in a contractual agreement with [Nike]." (Compl.¶ 22, Ex. 3.) Plaintiff has also asserted that his campaign against Nike's labor practices is based on social "justice," in particular the failure of the company to pay a living wage to its workers, rather than religious rights or related concepts. (*Id.*) Thus, even if a protected class could be alleged, that class would be based on ethical or sociopolitical views, rather than religious beliefs. Neither the New York State nor New York City Human Rights Law protects against such discrimination. *See* Executive Law § 296; N.Y. Administrative Code § 8–107; *cf. Avins v. Mangum,* 450 F.2d 932, 933 (2d Cir.1971) (noting that the New York State Commission for Human Rights dismissed claim on the grounds that the Commission had no jurisdiction to consider discrimination due to "political and social views"). For these reasons, plaintiff's employment discrimination claims must be dismissed pursuant to Rule 12(b)(6).[10]

### 2. Breach of Contract

Plaintiff's sole allegation in his seventh cause of action, for breach of contract, is that St. John's "had no valid reason to constructively discharge plaintiff and is thus liable for breach of their written agreement and verbal agreement to extend the terms of the written agreement." (Compl.¶ 43.) To state a claim for breach of contract under New York law, a party must plead (i) the formation of a contract, (ii) the plaintiff's performance of his obligations thereunder, (iii) defendant's

failure to perform his obligations, and (iv) resulting damages to plaintiff. *See Nakano v. Jamie Sadock, Inc.,* No. 98 Civ. 515, 2000 WL 680365, at *5 (S.D.N.Y. May 25, 2000) (citation omitted). Plaintiff alleges a breach of his Agreement with St. John's due to his purported constructive discharge from the University. However, plaintiff failed to allege, in nonconclusory language, the provision(s) of the contract upon which liability is predicated, *see Sud v. Sud,* 211 A.D.2d 423, 621 N.Y.S.2d 37, 38 (1st Dep't 1995) (citing *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.,* 129 A.D.2d 927, 514 N.Y.S.2d 1002 (3d Dep't 1987)), or the nature of the breach, *see D'Accord Financial Servs. v. Metsa–Serla Oy,* No. 98 Civ. 5847, 1999 WL 58916, at *6 (S.D.N.Y. Feb.8, 1999).[11] In addition, plaintiff does not allege that any damages or other loss, including monetary loss, resulted from his resignation. *See Colina v. One East River Realty Co., LLC,* No. 99 Civ. 5173, 2000 WL 1171126, at *9 (S.D.N.Y. Aug.17, 2000); *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 602 (S.D.N.Y.1982) ("Liability does not exist in a vacuum; there must be a showing of some damage ...."). The Complaint provides no information from which the Court could infer such damages. While plaintiff was allegedly told to resign on one occasion if he was not willing to wear Nike athletic apparel, his resignation letter states that the decision was made on his own accord, as "a matter of conscience." (Compl., Ex. 3.) This decision was made after the University and plaintiff had agreed to extend the Agreement for another year. Because plaintiff has failed to state a prima facie claim for breach of

---

10. Because the Court finds that plaintiff has failed to state a claim under the New York Human Rights laws, it need not consider St. John's arguments that plaintiff is not an "employee" for the purposes of the statutes, or that the University's alleged actions are exempt from the application of the New York State Human Rights Law. (St. John's Memorandum of Law in Support of Motion to Dismiss the Complaint at 15–17; Pl.'s Mem. at 6–7.)

11. In its opposition papers, plaintiff states that nothing in the Agreement (i) waived his right to free speech, or (ii) required plaintiff to "owe[ ] his allegiance to the altar of Nike." (Pl.'s Mem. at 8.) He therefore alleges that "the university sought to impose the Nike contract retroactively on [plaintiff]." (*Id.*) This explanation may confirm plaintiff's disagreement with the business relationship between St. John's and Nike, but it does not clarify the nature of the alleged breach by reason of constructive discharge, as plead in the Complaint.

contract, that claim must be dismissed pursuant to Rule 12(b)(6).

### 3. Defamation

Plaintiff's eighth cause of action alleges defamation on the part of both defendants. In particular, plaintiff claims that "St. John's [ ] wrote and published false statements in September of 1999 about [plaintiff] in an attempt to disparage his reputation." (Compl.¶ 45.) In support, plaintiff points to a single statement, namely that he "was not a former assistant soccer coach," which was "widely distributed at many campuses across the country ...." (*Id.*) He further alleges that in 1999 St. John's and Nike "made other verbal false statement [sic] about [plaintiff] in an attempt to disparage his reputation." (*Id.* ¶ 46.) These statements, which were purportedly made "with actual knowledge of their falsity and with malice," damaged plaintiff's reputation by "injur[ing] plaintiff in his profession and employment, and further, impugning him to be dishonest." (*Id.* ¶¶ 47–49.)

■ In order to establish a claim for defamation under New York law, a plaintiff must allege (i) a false and defamatory statement of fact, (ii) of or concerning the plaintiff, (iii) publication to a third party, and (iv) injury to the plaintiff as a result. *See Nowak v. EGW Home Care, Inc.*, 82 F.Supp.2d 101, 113 (W.D.N.Y. 2000) (citing *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir.1993)). However, while the defamation need not be plead *in haec verba*, a pleading is only sufficient if it adequately identifies "the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Broome v. Biondi*, No. 96 Civ. 0805, 1997 WL 83295, at *2 (S.D.N.Y. Feb. 10, 1997); *see also Ives v. Guilford Mills*, 3 F.Supp.2d 191, 199 (N.D.N.Y.1998) (dismissing defamation claim where it did not identify with precision who at defendant company made the alleged statements, at what times or places, and to whom the statements were made). "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986). Mere conclusory statements that plaintiff was disparaged by false statements are insufficient to state a defamation claim. *See Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 271 (2d Cir.1999) (affirming dismissal of plaintiff's unsupported claim of defamation that defendant "said 'something bad' about him to client"); *Ford v. Clement*, 834 F.Supp. 72, 78 (S.D.N.Y.1993), *aff'd* 29 F.3d 621 (2d Cir.1994) (finding allegations of defamation insufficient where they failed to "give [defendant] any notice whatsoever of the communications at issue").

■ Plaintiff has failed to meet these pleading requirements. Plaintiff alleges a series of defamatory statements without identifying the substance of those statements, by whom they were made, or to whom they were communicated. The one statement plaintiff does identify, St. John's' statement that plaintiff "was not a former assistant soccer coach," cannot save plaintiff's claim because it is not a false statement of fact. While plaintiff ambiguously describes himself at the outset of his Complaint as a "teaching assistant/soccer coach/graduate student," (Compl.¶ 1), the Agreement denotes him as "Administrative Assistant in the Department/Office of Men's Soccer," a fact plaintiff acknowledges. (Compl.¶ 6, Ex. 1.) Further, in his resignation letter, plaintiff describes himself as a "graduate assistant." (*Id.*, Ex. 3.) The record therefore reflects that plaintiff was not an assistant soccer coach. Accordingly, plaintiff's defamation claim must be dismissed pursuant to Rule 12(b)(6).

### F. Motion for Leave to Amend

Subsequent to the full briefing of defendants' motions to dismiss and defendants' answers to the Complaint, plaintiff filed a motion for leave to amend his Complaint. Plaintiff's proposed Amended Complaint adds several new factual allegations and two new counts, his ninth and tenth causes of action, based on violations of the Racke-

teer Influenced and Corrupt Organizations Act ("RICO").[12] (Proposed Amended Complaint ("Prop.Amend.Compl.") ¶¶ 6–51, 96–119.)

After the filing of a responsive pleading, the grant or denial of leave to amend a pleading is within the discretion of the district court. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Fed.R.Civ.P. 15(a) ("Rule 15(a)".) While leave to amend shall be granted freely "when justice so requires," Rule 15(a), it may be denied upon a finding of "bad faith, undue delay, or prejudice to the opposing party." *In Re 1993 Corning Securities Litig.,* No. 93 Civ. 7015(AGS), 1996 WL 257603, at *1 (S.D.N.Y. May 15, 1996). Moreover, a motion for leave to amend may be denied where the amendment would be "futile" and has "no colorable merit." *Northbrook National Ins. Co. v. J & R Vending Corp.,* 167 F.R.D. 643, 647 (E.D.N.Y.1996) (citing *Oliver v. DeMarinis & Co.,* No. 90 Civ. 7950, 1993 WL 33421, at *2 (S.D.N.Y. Jan.29, 1993) (citation omitted)); *see also Foman, supra,* 371 U.S. at 182, 83 S.Ct. 227 (noting "futility of amendment" as a reason for denial of leave to amend). An amendment may be considered "futile" if the amended pleading could not survive a motion to dismiss. *See Smith v. Kessner,* 183 F.R.D. 373, 373 (S.D.N.Y.1998).

Plaintiff's proposed amendment would be futile because he lacks standing to assert a RICO claim. Under 18 U.S.C. § 1964(c), "[a]ny person injured in his business and property by reason of a violation of section 1962 of this chapter" has standing to pursue a civil RICO cause of action. This requires a showing that the plaintiff's injury was proximately caused by the defendants' alleged racketeering activity. *See Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

Plaintiff has failed to establish this causal relationship. In his proposed Amended Complaint, plaintiff alleges that "[Nike]'s racketeering income has given Nike the resources to enter into a contract with St. John's University. It is that contract that has caused direct injury to plaintiff." (Prop.Amend.Compl.¶ 16.) Such an attenuated connection belies plaintiff's conclusory allegation in his stated RICO causes of action that "[a]s a direct and proximate result of defendants' violations ... plaintiff has been injured in his business and property." (*Id.* ¶¶ 112, 117.) Moreover, as with his other claims, plaintiff has failed to explain what injury, if any, he allegedly suffered as a result of defendants' illegal acts.

Viewing the proposed amendment in the light most favorable to the plaintiff, it appears that plaintiff wishes to assert he was forced to resign his employment at St. John's because of his opposition to Nike's alleged racketeering activity. (Prop. Amend.Compl.¶ 68.) However, the Supreme Court has held that a plaintiff asserting loss of employment in connection with illegal practices does not have standing to assert a RICO claim, where such termination is not caused by an act that is independently wrongful under RICO. *See Beck v. Prupis,* —— U.S. ——, ——, 120 S.Ct. 1608, 1617, 146 L.Ed.2d 561 (2000) (holding, in the context of the termination of corporation's president, that injury caused by an overt act not independently wrongful under RICO does not give rise to RICO cause of action) (citing *Hecht v. Commerce Clearing House,* 897 F.2d 21, 25 (2d Cir.1990)). In this case, any injuries plaintiff could allege would result from his constructive discharge from St. John's, an act that itself is not independently wrongful under RICO. Plaintiff therefore does not have standing under Section 1964(c), and his RICO claims must be dismissed.[13]

Even if plaintiff's proposed amendment could survive a motion to dis-

---

12. All other counts remain the same as in the original Complaint.

13. The cases plaintiff cites in support of his motion, and in particular for the proposition that "leave [to amend] should freely be grant-

miss, the circumstances surrounding the filing of plaintiff's motion for leave to amend warrant denial of plaintiff's motion on account of bad faith and undue delay. First, plaintiff has had ample opportunity to investigate its claims and seek leave to amend. Plaintiff waited over one year from his resignation from St. John's in order to file the Complaint, and five months after the filing of the Complaint to file its motion for leave to amend.[14] Second, his opposition to the motions to dismiss relied on his "Amended Complaint" to cure the deficiencies in his original Complaint with respect to three separate counts. (Pl.'s Opp. at 3–6, discussing plaintiff's claims under 42 U.S.C. §§ 1985, 1986, 1981a.) However, plaintiff had not yet filed a motion for leave to amend; nor did his memorandum indicate what deficiencies the amended complaint would cure. Third, plaintiff's proposed Amended Complaint does not cure any of the deficiencies in the original Complaint, as it repeats the allegations of the original Complaint for the subject counts. Based on such conduct, the Court finds that plaintiff acted in bad faith, and with the intention to unduly delay this litigation, by (i) relying on a hypothetical Amended Complaint in the opposition papers, and misrepresenting the content of the Amended Complaint, and by (ii) waiting until after the motions to dismiss were fully briefed in order to file his motion for leave to amend, based on an insufficient new charge.[15] *See PI, Inc. v. Quality Products, Inc.*, 907 F.Supp. 752, 764 (S.D.N.Y. 1995) ("When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims . . . the court is free to deny leave to amend."); *Bymoen v. Herzog, Heine, Geduld, Inc.*, 88 Civ. 1796, 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991) (same); *CL–Alexanders Laing & Cruickshank v. Goldfeld*, 739 F.Supp. 158, 165 (S.D.N.Y.1990) (denying leave to amend where proposed amended complaint was "festooned with unnecessary evidentiary detail" and was "crafted in order to elicit a strong reaction in the jury room"). Further, defendants will be prejudiced by a grant of the motion, which would "require [them] to expend significant additional resources to conduct discovery and prepare for trial [and] significantly delay the resolution of the dispute . . . ." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993) (citations and internal quotations omitted). Plaintiff's motion for leave to amend his Complaint must therefore be denied.

## III. Conclusion

For the foregoing reasons, the Court grants defendants' motions to dismiss in

ed in RICO cases" are inapposite. In *Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995), the Ninth Circuit did not grant plaintiff leave to file an amended complaint, but remanded for reconsideration of the motion. In *Chisolm v. TranSouth Financial Corp.*, 95 F.3d 331 (4th Cir.1996), the Fourth Circuit found that under the circumstances of that case, plaintiff did have standing under Section 1964(c) and should have been granted leave to amend. Neither court stated that leave to amend should freely be granted in RICO cases. Moreover, plaintiff's suggestion that leave to amend should be allowed "even if this court believes that plaintiffs [sic] have not pleaded a RICO claim upon which relief can be granted," is unsupported by the record and is contrary to law. (Memorandum in Support of Plaintiff's Motion for Leave to File an Amended Complaint at 3.)

14. This period was punctuated by (i) correspondence between the parties and the Court during which defendants' proposed motions to dismiss were discussed, (ii) a pre-trial conference with the Court concerning such motions, and (iii) the filing of defendants' motion papers.

15. Plaintiff's conduct related to the Amended Complaint also supports defendants' allegation that plaintiff filed this action principally to raise awareness for his "campaign for justice" against Nike. (Reply Memorandum of Law in Further Support of Defendant Nike, Inc.'s Motion to Dismiss at 2–3, Ex. A; Reply Memorandum of Law in Further Support of Defendant St. John's University's Motion to Dismiss the Complaint ("St. John's Rep.") at 12–13.) However, the Court declines to impose sanctions on plaintiff, pursuant to Fed. R.Civ.P. 11 or 28 U.S.C. § 1927, as requested by St. John's. (St. John's Rep. at 10–13.)

full, and denies plaintiff's motion for leave to amend. The Clerk of the Court is directed to close the file in this action.

SO ORDERED.